**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NOVEL LABORATORIES, INC., : <br> : <br> Plaintiff, : <br> : <br> v. : <br> : <br> KVK-TECH, INC. and GATOR : <br> PHARMACEUTICALS, INC., : <br> : <br> Defendants. : | Civil Action No. 17-0739-BRM-LHG <br><br> **OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Plaintiff Novel Laboratories, Inc.'s ("Novel") Motion to Remand this action to the Superior Court of New Jersey, Law Division, Somerset County, or, in the alternative, for a grant of preliminary and permanent injunctive relief by default. (ECF No. 9.) Defendant Gator Pharmaceuticals, Inc. ("Gator") and KVK-Tech, Inc. ("KVK") (collectively, "Defendants") oppose the motion. (ECF No. 17.) Also before this Court is Gator's Motion to Dismiss Novel's Complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) or, in the alternative, for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). (ECF No. 16.) Novel opposes the motion. (ECF No. 21.) Pursuant to Federal Rule of Civil Procedure 78(a), this Court heard oral argument on June 12, 2017. For the reasons set forth herein, Novel's Motion to Remand is **GRANTED**, and its request for injunctive relief is **DENIED AS MOOT**. Plaintiff's request for attorneys' fees is **DENIED**. Gator's Motion to Dismiss is **DENIED AS MOOT**.

I.   BACKGROUND

This case arises from the alleged breach of an October 3, 2012 settlement agreement (the "Settlement Agreement") between Novel[1] and KVK, which related to KVK's alleged misappropriation of trade secrets obtained from a former Novel employee. The parties disagree about the extent to which the current dispute relates to the Settlement Agreement, which in turn affects whether removal to this Court was appropriate.

A.   The Original Lawsuit and Settlement Agreement

Both Novel and KVK develop and manufacture generic pharmaceuticals. (ECF No 1-1 ¶¶ 4-5.) Novel alleges Gator is the alter ego of KVK. (*Id.* ¶ 6.) Generic pharmaceutical manufacturers have strong financial incentive to be the first party to file for Food and Drug Administration ("FDA") approval to market a generic drug, because the first party to seek such approval receives the exclusive right to market the product for 180 days. (*Id.* ¶¶ 7-8.)

On February 3, 2011, Novel sued KVK in the Superior Court of New Jersey, Law Division, Somerset County (the "First Lawsuit"), alleging, *inter alia*, KVK had violated an October 2010 standstill agreement (the "Standstill Agreement"). (*Id.* ¶ 15.) The parties reached the Standstill Agreement to avoid litigation over Novel's assertion that a former employee was providing proprietary information to KVK.[2] (*Id.* ¶¶ 13-14.) Five days after Novel filed the First

---

[1] Lupin, Inc. acquired Novel on March 8, 2016. Lupin, Inc., a Delaware corporation, is indirectly wholly owned by the parent company Lupin Limited ("Lupin"), and Lupin continues to operate Novel as a separate entity. (ECF 9-1 at n.1.)

[2] Under the Standstill Agreement, KVK agreed it would not manufacture a product developed in concert with the former Novel employee, Muthusamy Shanmugam ("Shanmugam"), whom Novel had terminated for consulting with its competitors. (*Id.* ¶¶ 11-14.) Novel alleged the product Shanmugam and KVK planned to manufacture (the "KVK Product") appropriated trade secrets Shanmugam obtained through his knowledge of a similar drug Novel had been

Lawsuit, the court granted Novel's request for injunctive relief preventing KVK, Shanmugam, and the entity they formed from producing their planned product. (*Id.* ¶¶ 15-16.)

The parties settled their dispute and on October 3, 2012, appeared in court and put the terms of the settlement on the record. (*Id.* ¶ 17.) Novel's counsel explained Novel would make scheduled payments totaling $1 million to the defendants in the First Lawsuit after it launched the Novel Product. (*Id.* ¶ 8.) In exchange for the payments, KVK agreed it would withdraw its application to the FDA to market the KVK Product, as well as to cease efforts to develop or assist another party with developing the KVK Product. (*Id.*) After putting the Settlement Agreement on the record, Novel and KVK began drafting a written agreement memorializing the terms. (*Id.* ¶ 20.) The parties exchanged drafts but never memorialized a final written settlement. (*Id.*)

### B. The Breach of the Settlement Agreement

Soon after the settlement was reached, Novel learned KVK had filed a New Drug Application ("NDA") with the FDA for its powder-based generic version of SUPREP. (*Id.* ¶ 23.) On July 24, 2013, Novel filed a motion to enforce the Settlement Agreement, again in the Superior Court of New Jersey, Somerset County. (*Id.* ¶ 24.) On October 9, 2013, the court held KVK had breached the Settlement Agreement and ordered KVK to withdraw the NDA and refrain from filing any applications to manufacture any type of drug similar to the KVK Product.

---

developing (the "Novel Product").[2] (*Id.* ¶¶ 12, 15.) The Novel Product was a liquid generic of the colon cleansing drug, SUPREP, while the KVK Product was a powder form of the same drug. (*Id.* ¶ 23.)

(*Id.*) KVK challenged the court's decision,[3] first in a motion for reconsideration that was denied, then in an appeal to the Appellate Division, which affirmed the trial court, and finally in an unsuccessful petition for certification to the Supreme Court of New Jersey.

### C. KVK's Alleged Continued Breach of the Settlement Agreement

Notwithstanding the various state courts' rulings, KVK and Gator did not withdraw the NDA and instead wrote to the FDA on May 29, 2015 to revoke KVK's agency status on the NDA. (*Id.* ¶¶ 28-29.) On June 10, 2015, KVK wrote to the FDA and asked for the NDA to be withdrawn, but added Gator, not KVK, was the owner of the NDA. (*Id.* ¶ 29.) From May 28, 2015, to June 12, 2015, Novel inquired with KVK regarding the withdrawal of the NDA, but KVK's counsel did not reply. (*Id.*) On September 2, 2015, Novel filed a second motion to enforce the Settlement Agreement in the Superior Court, but the court denied the motion on the ground that it was unripe, as KVK and Gator had not received FDA approval for any product. (*Id.* ¶¶ 30-31.)

On December 27, 2016, the FDA approved the NDA. (*Id.* ¶ 33.) The FDA-approved packaging (the "Approved Packaging") indicated KVK was manufacturing the product for Gator, directed customers to contact KVK for more information, and provided KVK's website and telephone number. (*Id.*) Further, the Approved Packaging indicated the manufacturer's code number is 10702, the same manufacturer number assigned to KVK on its other products.

---

[3] KVK argued for the first time in its motion for reconsideration that it could not withdraw the NDA without Gator's consent, as Gator was a separate entity. (ECF No. 9-21 at 25.) The Appellate Division affirmed the trial court's rejection of KVK's assertion, stating "[KVK's] argument on reconsideration that they cannot control Gator because Gator is a separate and distinct entity that submitted the application . . . is seemingly inconsistent with [their] original characterization of Gator as a partner in that venture." (ECF No. 9-21 at 47-48.)

(*Id.* ¶ 34.) Novel filed this lawsuit on January 20, 2017,[4] in the Superior Court of New Jersey, Law Division, Somerset County (Civ. A. No. L-70-17), asserting claims against KVK for breach of contract (Count One), against Gator for breach of contract and tortious interference with contract (Counts Two and Four), and against both parties for misappropriation of trade secrets and fraud (Counts Three and Five). (*Id.* ¶¶ 36-82.) Gator removed the lawsuit to this Court on February 3, 2017. (ECF No. 1.)

On February 6, 2017, Novel filed its Motion to Remand, arguing: (1) Novel and KVK agreed the Superior Court would retain jurisdiction of the Settlement Agreement; (2) all of Novel's claims relate to enforcement of the Settlement Agreement; and (3) judicial economy suggests remand is proper, as the Superior Court is familiar with the disputes between the parties. (ECF No. 9.)

## II. LEGAL STANDARD

A notice of removal of a civil action must be filed by a defendant within thirty (30) days of receiving the complaint. 28 U.S.C. § 1446(b)(1). However, where it is not evident from the face of the complaint that a case is removable, "a notice of removal may be filed within thirty [(30)] days after receipt by Defendants . . . of a copy of an amended pleading, motion, order or other paper from which it may be first ascertained that the case is one which is or has become removable." *Id.* § 1446(b)(3).

Upon the removal of an action, a plaintiff may challenge such removal by moving to remand the case back to state court. *Id.* § 1447. Grounds for remand include: "(1) lack of district

---

[4] At oral argument, Novel's counsel explained he initially filed another motion to enforce the settlement on January 11, 2017, but the Superior Court directed him to include Gator as a defendant. Novel's counsel the filed the Complaint. Citation Needed to this

5

court subject matter jurisdiction or (2) a defect in the removal process." *PAS v. Travelers Ins. Co.*, 7 F.3d 349, 352 (3d Cir. 1993). A motion for remand on the basis of a procedural defect in the removal must be filed within thirty (30) days of the notice of removal, 28 U.S.C. § 1447(c), whereas "a motion to remand based on lack of subject matter jurisdiction may be made at any time before final judgment," *Foster v. Chesapeake Ins. Co.*, 933 F.2d 1207, 1212-13 (3d Cir. 1991) (citing 28 U.S.C. § 1447(c)).

"The party asserting jurisdiction bears the burden of showing that at all stages of the litigation the case is properly before the federal court." *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004). Federal courts rigorously enforce the congressional intent to restrict federal diversity jurisdiction, and therefore removal statutes are "strictly construed against removal" and "doubts must be resolved in favor of remand." *Id.* at 396-403. Additionally, when a case is removed, "all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A).

### III. DECISION

Novel does not dispute this Court could have jurisdiction over this lawsuit based on diversity jurisdiction. (*See* ECF No. 1 and ECF No. 9 at 15.) Novel argues, however, that removal was improper because Novel and KVK expressly agreed the New Jersey Superior Court would retain jurisdiction to enforce the Settlement Agreement. (ECF No. 9 at 15.) Defendants make three arguments in opposition to Novel's Motion to Remand: (1) Gator argues it never agreed it was subject to the Superior Court's jurisdiction; (2) KVK never agreed the Superior Court would retain exclusive jurisdiction over the enforcement of the Settlement Agreement; and (3) even if this Court finds the Superior Court had exclusive jurisdiction,

Novel's claims in its Complaint are separate and apart from the enforcement of the Settlement Agreement. (ECF No. 17 at 1-2.)

### A. The Settlement Agreement's Determination of Jurisdiction

The parties agree on the essential facts of the Settlement Agreement. First, the parties discussed the issue of jurisdiction for the purposes of enforcing the Settlement Agreement in the Superior Court before the Honorable William M. D'Annunzio, A.J.A.D., retired, on recall. (*See* Tr. of Oct. 3, 2012, Settlement Hr'g (Certif. of Hillel I. Parness, Esq., Ex. A (ECF No. 9-3) at 9-10).)

> MS. JACOBSON [Counsel for Novel]: We would, your Honor, we'd like it to bring something that we'd like the Court to we'd like some mechanism in which if they violate it --
>
> THE COURT: Why do you have to file it with the Court?
>
> MR. TABASSO [Counsel for KVK]: We have discussed it, and we can do a stipulation whereby the Court would retain jurisdiction over enforcement of certain provisions of the agreement.

(*Id.* at 9 and T9:11-20.) Following an off-the-record discussion with Judge D'Annunzio, the parties went back on the record, and Judge D'Annunzio stated, "[T]here will be a stipulation of dismissal with prejudice, reciting the fact that there has been a settlement and reciting the fact that the court retains jurisdiction to enforce the settlement." (*Id.* at 10 and T10:3-7.)

Second, while there was no executed memorialization of the Settlement Agreement, the parties acknowledge Novel and KVK exchanged drafts of a written settlement, which addressed the question of jurisdiction. (*See* ECF No. 17 at 10 and ECF No. 18 at 8.) Novel drafted a clause—which KVK did not alter in its markup of the draft—that stated:

> The Parties agree that any disputes concerning the interpretation, application or enforcement of this Agreement shall be within the

> exclusive jurisdiction in the appropriate courts within the state of New Jersey and that as per Paragraph __ the court in the New Jersey Action is retaining jurisdiction for such purposes, with the exception of the Confession of Judgement which may be filed in Pennsylvania.

(ECF Nos. 9-4 and 9-5.)

Defendants argue neither the Settlement Agreement nor the memorialization of the Settlement Agreement conferred exclusive jurisdiction upon the Superior Court. (ECF No. 17 at 5-11.) Defendants contend the Settlement Agreement that was put on the record in the Superior Court was a "permissive" forum selection clause that gave the Superior Court the ability to retain jurisdiction, as opposed to an "exclusive" selection clause, which would provide the Superior Court sole jurisdiction over enforcement of the Settlement Agreement. (*Id.* at 6, 8 (citing *Kane v. Mfrs. Life Ins. Co.*, No. 08-4581 (KSH), 2009 WL 78143 (D.N.J. Jan. 9, 2009)).) Defendants claim the statement in the draft written agreement that enforcement "shall be within the exclusive jurisdiction in the appropriate courts within the State of New Jersey" confers jurisdiction on any court in the State, including federal courts. (*Id.* at 10 (citing *New Jersey v. Merrill Lynch & Co.*, 640 F.3d 545, 549 (3d Cir. 2011)).)

The Court finds the Settlement Agreement and the draft written agreement, read in concert, suggest remand is appropriate. "In determining whether parties have contractually waived the right to remove to a federal court, a court should 'simply . . . use[e] the same benchmarks of construction and, if applicable, interpretation as it employs in resolving all preliminary contractual questions.'" *Merrill Lynch*, 640 F.3d at 548 (quoting *Foster*, 933 F.2d at 1217 n.15). A court should "look to the 'plain and ordinary meaning' of the forum selection clause to determine whether it amounted to a waiver of the right to remove." *Id.* (citing *Buono Sales, Inc. v. Chrysler Motors Corp.*, 449 F.2d 715, 721 (3d Cir. 1971)). Insofar as the

8

Settlement Agreement and the draft written agreement are ambiguous, the Court may look to the parties' course of conduct throughout the life of the settlement. *See Teamsters Indus. Emps. Welfare Fund v. Rolls-Royce Motor Cars, Inc.*, 989 F.2d 132, 135 (3d Cir. 1993) (noting that courts may look to parties' conduct to interpret a contract even in the absence of ambiguity).

Here, principles of contract interpretation indicate the Settlement Agreement granted exclusive jurisdiction to the Superior Court. When the parties put the Settlement Agreement on the record in Superior Court, KVK's counsel offered, "[W]e can do a stipulation whereby the [Superior] Court would retain jurisdiction over enforcement of certain provisions of the agreement." (ECF No. 9-3 at T9:17-20.) Following an off-the-record discussion with the parties, Judge D'Annunzio stated the parties agreed "that the court retains jurisdiction to enforce the settlement." (*Id.* at T10:6-7.) The intent of the parties for the Superior Court—alone—to retain jurisdiction is clear. Further, the draft written agreement provided "enforcement of this Agreement shall be within the exclusive jurisdiction in the appropriate courts within the state of New Jersey and that as per Paragraph __ [sic] the court in the New Jersey Action is retaining jurisdiction for such purposes." (ECF Nos. 9-4 and 9-5.) The Settlement Agreement and the draft written agreement suggest the parties intended the Superior Court to retain exclusive jurisdiction.

The parties' conduct also suggests they intended the Superior Court to retain exclusive jurisdiction, as they litigated their dispute in New Jersey state courts at least five times since February 3, 2011 (ECF No. 1-1 ¶ 15), including: contesting a motion to enforce the Settlement Agreement in July 2013 (*id.* ¶ 24); KVK's motion for reconsideration, which was denied on February 3, 2014 (*id.* ¶ 26); an appeal to the Appellate Division, which affirmed the Superior

9

Court on February 2, 2015 (*id.* ¶ 27); and a petition for certification to the Supreme Court of New Jersey that was denied on May 22, 2015 (ECF No. 9-10). *See Merrill Lynch*, 640 F.3d at 548 (noting that courts should us principles of contract construction to interpret forum selection clauses); *Teamsters Indus. Emps. Welfare Fund*, 989 F.2d at 135 (stating that courts may consider the parties' conduct to discern their intent). Finally, remand is appropriate "[a]s the removing party [] bears the burden of demonstrating removal jurisdiction . . . *with any doubt resolved in favor of remand*." *The Bank of N.Y. Mellon v. ACR Energy Partners, LLC*, 543 B.R. 158, 163 (D.N.J. 2004) (citing *Samuel-Bassett*, 357 F.3d at 396) (emphasis added).

Defendants base much of their argument that the Superior Court retained only permissive jurisdiction in *Kane*, 2009 WL 78143. (ECF No. 17 at 8-9.) However, that case is readily distinguishable from this matter. In *Kane*, the court found the forum selection clause did not apply because the plaintiff had already satisfied his obligations under the settlement agreement. *Kane*, 2009 WL 78143 at *3. The dispute in that case related to obligations that arose between the parties after the settlement. *Id.* Here, neither Novel nor KVK argues the Settlement Agreement has been fulfilled.

As this Court has found the Superior Court retained exclusive jurisdiction over enforcement of the Settlement Agreement, Novel's Motion to Remand is **GRANTED**.

### B. Novel's Additional Claims

Defendants argue that, even if the Superior Court retained exclusive jurisdiction over enforcement of the Settlement Agreement, remand is not appropriate because Novel asserts claims that are beyond the scope of the Settlement Agreement. (ECF No. 17 at 11-16.) Novel asserts claims against KVK for breach of contract (Count One), against Gator for breach of contract and tortious interference with contract (Counts Two and Four), and against both parties

for misappropriation of trade secrets and fraud (Counts Three and Five). (ECF No. 1-1 ¶¶ 36-82.)

The Court finds Novel's claims are related to and arise from Defendants' conduct prior to entering into the Settlement Agreement and subsequent breach of the Settlement Agreement. The Settlement Agreement: (1) required KVK to withdraw the NDA and (2) prohibited KVK from making an efforts to market the KVK Product. (ECF No. 9-3 at 3 and T3:20-4:3.) Each of Novel's claims relate to a violation of one or both of those Settlement Agreement provisions. Count One is a claim for a breach of the Settlement Agreement itself; Count Two is a claim against Gator for a breach of the Settlement Agreement under the theory that it is KVK's alter ego; Count Three is a claim against Defendants for misappropriation of trade secrets, i.e. using Novel's proprietary information to manufacture a product in violation of the Settlement Agreement; Count Four is a claim against Gator for tortious interference with contract premised on a theory that Gator induced KVK to violate the Settlement Agreement; and Count Five is a claim against Defendants for fraud premised on the theory that Defendants made several misrepresentations to Novel and the Superior Court in their efforts to breach and circumvent the Settlement Agreement. All of Novel's claims relate to its efforts to enforce the Settlement Agreement which it claims, and the state court has found, KVK breached. *See PGT Trucking, Inc. v. Lyman*, 500 F. App'x 202, 204 (3d Cir. 2012) (finding a forum selection clause applies to all claims that arise from the agreement that contains the forum selection clause).

Therefore, the Court finds Novel's claims are related to enforcement of the Settlement Agreement and Novel's Motion for Remand is **GRANTED**. Novel's application for an injunction is **DENIED AS MOOT**.

### C. Personal Jurisdiction Over Gator

Since this Court finds remand is appropriate, it shall not retain jurisdiction over this lawsuit. Therefore, the question of personal jurisdiction over Gator is immaterial and Gator's Motion to Dismiss is **DENIED AS MOOT**.

### D. Attorneys' Fees and Costs

This Court may, when remanding a case, "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court has discretion in determining "whether unusual circumstances warrant a departure from the rule in a given case." *Id.*

The Court finds Defendants had a reasonable basis for seeking removal. No extraordinary circumstances exist for the Court to find otherwise. Defendants removed based on their interpretation of the Settlement Agreement as conferring only permissive jurisdiction on the Superior Court. Defendants' removal was objectively reasonable. Novel's motion for attorneys' fees is **DENIED.**

## IV. CONCLUSION

For the reasons set forth above, Novel's Motion to Remand (ECF No. 9) is **GRANTED**. Novel's request for attorneys' fees is **DENIED**. As this Court does not retain jurisdiction of this matter, Gator's Motion to Dismiss (ECF No. 16) is **DENIED AS MOOT**. This matter is therefore remanded to the Superior Court of New Jersey, Law Division, Somerset County and the case is **CLOSED**. An appropriate order will follow.


Date: June 19, 2017                                */s/ Brian R. Martinotti*  
                                                   **HON. BRIAN R. MARTINOTTI**  
                                                   **UNITED STATES DISTRICT JUDGE**